THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CARLOTTA SMITH, | ) | Case No.: CIV S-03-0672 FCD DAD - PS |
| Plaintiff, | ) ) | |
| v. | ) ) | **FINDINGS OF FACT AND CONCLUSIONS OF LAW RE:** |
| GIL MOORE, NEW WEST PETROLEUM, | ) ) ) | **DEFENDANT NEW WEST STATIONS, INC.'S MOTION FOR JUDGMENT ON PARTIAL FINDINGS** |
| Defendants. | ) ) | **[Fed. R. Civ. P. 52(c)]** |
| | ) ) ) | |

After submission by plaintiff Carlotta Smith ("plaintiff") of the evidence in support of her case, defendant New West Stations, Inc. ("defendant") moved for judgment on partial findings pursuant to Federal Rule of Civil Procedure, Rule 52(c). The Court reserved ruling on the motion pending the testimony of defense witness Naji Bsharah. After completion of said testimony, the court heard and considered defendant's motion. Following argument by both sides, the court presented its reasoning and granted the motion. The instant order memorializes the court's findings of fact and conclusion of law.

Federal Rule of Civil Procedure, Rule 52(c) provides that if, during a trial without a jury, a party has been fully heard on an issue and the court finds against that party on the issue, the court

1

may enter judgment as a matter of law against that party with respect to a claim that cannot under the controlling law be maintained.

Plaintiff asserts a claim for relief against defendant for violation of Title VII, under the alternative theories described below. However, underlying all of plaintiff's theories are the following essential allegations: (1) plaintiff was discriminated against because new employees were hired at a greater rate of pay than her; (2) she was told she could not work certain shifts because of her race; (3) she had to work alone on the graveyard shift because of her race; and (4) defendant's ultimate termination of her employment was either based on her race or in retaliation for her complaints of racial discrimination.

## Title VII Legal Standards

### Title VII Prohibitions

Title VII makes unlawful the practice of an employer to, among other things, discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race. (42 U.S.C. § 2000e-2(a)(1).)

Further, Title VII makes unlawful the practice of an employer to, among other things, discriminate against any employee because he or she has opposed any practice made unlawful by the subchapter, or made a charge, testified, assisted or participated in an investigation, proceeding or hearing under the subchapter. (42 U.S.C. § 2000e-3(a).)

### Title VII Discrimination (Disparate Treatment) Standards

Federal law prohibits discharging any individual because of his or her race, color, religion, sex, or national origin. (42 U.S.C. § 2000e-2.) To establish a disparate treatment claim, a plaintiff must prove that he or she was intentionally treated less favorably because of race, color, religion, sex or national origin. (Maurey v. University of Southern California, 87 F. Supp. 2d 1021, 1030 (C.D. Cal. 1999); see U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983).)

In a Title VII race discrimination action, the court employs the three-step burden-shifting analysis established by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). Although the court employs this burden-shifting analysis, the burden of persuasion

2

**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: DEFENDANT NEW WEST STATIONS, INC.'S MOTION FOR JUDGMENT ON PARTIAL FINDINGS**

always remains with the plaintiff.  (Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Jauregui v. City of Glendale, 852 F.2d 1128, 1134 (9th Cir. 1988).)

In order to establish a prima facie case of discrimination, a plaintiff must show by a preponderance of evidence that:  (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably.  (See, e.g., McDonnell Douglas Corp. v. Green, supra, 411 U.S. at 802;  Leong v. Potter, 347 F.3d 117, 1124 (9th Cir. 2003).)

Ultimately, the plaintiff must offer sufficient evidence that "give[s] rise to an inference of unlawful discrimination."  (Texas Dept. of Community Affairs v. Burdine, supra, 450 U.S. at 253.)  Proof of discriminatory intent may be direct, circumstantial or inferred from statistical evidence.  (See Stender v. Lucky Stores, 803 F. Supp. 259, 319 (N.D.Cal. 1992).)

If the plaintiff establishes a prima facie case, the employer may then articulate a legitimate, nondiscriminatory reason for the employment decision.  (Id.)  Again, while the burden of *production* shifts to the defendant at this point, the burden of *proof* remains with the plaintiff at all times.  (Texas Dep't of Cmty. Affairs v. Burdine, supra, 450 U.S. at 253; Jauregui v. City of Glendale, supra,  852 F.2d  at 1134.)  Once the employer offers a nondiscriminatory reason, the burden returns to the plaintiff to prove by a preponderance of the evidence that the articulated reason is a pretext for discrimination.  (See McDonnell Douglas, supra, 411 U.S. at 804; Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir.1993).)  That is, the plaintiff must demonstrate the employer's non-discriminatory reason for the discharge is false, or that the true reason for the discharge was discriminatory.  (See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918 (9th Cir.1996); Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir.1995).)

**Title VII Hostile Work Environment Standards**

A plaintiff asserting a Title VII claim under a hostile work environment theory must show by a preponderance of the evidence:  (1) the existence of a hostile work environment to which the plaintiff was subjected, and (2) that the employer is liable for the harassment that caused the

hostile environment to exist.  (See Faragher v. City of Boca Raton, supra, 524 U.S. 775, 787-89 (1998).)  To establish the existence of a hostile work environment, a plaintiff must prove that:  (1) she was subjected to conduct based on race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.  (Freitag v. Ayers, 468 F.3d 528, 539 (9th Cir. 2006).)  The third element requires consideration of the totality of the circumstances and whether the harassment was both objectively and subjectively abusive.  (Id.)

**Title VII Retaliation Standards**

Retaliation claims are analyzed under the McDonnell Douglas burden shifting standard referenced above.  (Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Nidds v. Schindler Elevator Corp., 113 F.3d 912, 919 (9th Cir. 1997).)

To state a prima facie case of retaliation, the plaintiff must show that: (1) she was engaged in a protected activity; (2)  she suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision.  (Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir.1984).)

Once plaintiff establishes a prima facie case, the burden then shifts to the employer who must present evidence of a legitimate, non-retaliatory reason for the employee's dismissal. Once this is done the initial presumption is considered rebutted and the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered non-retaliatory reasons were pre-textual.  (See Wrighten v. Metropolitan Hospitals, Inc., supra, 726 F.2d at 1354.)

**Findings of Fact**

Plaintiff applied for employment with New West Stations for a cashier position at one of its service stations in Lodi, California.  (Trial Transcript ["T.T."] 23:17-24:7.)  On August 9, 2000, plaintiff completed an Employee Availability Form requesting the graveyard shift -- 9:30 p.m. to 5:30 a.m. or 10:00 p.m. to 6:00 a.m.  (Pl.'s Ex. 2; Def.'s Ex. B.)  Plaintiff was then hired by defendant, and starting August 14, 2000, plaintiff worked the graveyard shift at the rate of $6.50 per hour.  (T.T. 24:23-25:1.)

4

**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: DEFENDANT NEW WEST STATIONS, INC.'S MOTION FOR JUDGMENT ON PARTIAL FINDINGS**

1  On or about May 16, 2001, plaintiff submitted an Employee Availability Form indicating a
2  desire for a 2:00 p.m. to 10:30 p.m. shift.  (Pl.'s Ex. 2; Def.'s Ex. B.)  Plaintiff was later given a
3  schedule that included the "swing shift."  (T.T. 110:22-111:8.)
4  Throughout her employment with defendant, plaintiff repeatedly and vocally complained
5  about aspects of the operation of the business such as the janitorial help, working alone at times,
6  use of bathroom facilities, pay and shift scheduling.  (T.T. 38:2-6; 90:3-98:13; 112:7-18; 149:14-
7  151:5; 152:21-153:19.)   Her year of employment was tumultuous, with various complaints,
8  including threats to get a lawyer and to make reports to the Labor Board.  (T.T. 95:17-99:19;
9  100:12-101:20; 104:23-106:6; 149:14-155:5; Pl.'s Exs. 7 and 8.)
10  In an effort to better the employment relationship, by letter dated July 13, 2001, plaintiff
11  was offered an Assistant Manager position at a rate of $9.00 per hour (at that time, plaintiff had
12  been given intermittent pay increases to $8.00 per hour).  (Pl.'s Ex. 6; T.T. 150:23-151:16.)  By
13  letters dated July 22, 2001 and July 24, 2001, plaintiff rejected the position.  (Pl.'s Exs. 7 and 8.)
14  On or about July 23, 2001, plaintiff submitted an Employee Availability Form indicating a
15  desire for a 6:00 a.m. to 2:30 p.m. or 5:30 a.m. to 2:00 pm. shift.  (Pl.'s Exs. 2 and 8.)  Plaintiff's
16  employment was "at-will," and she had no right to a particular shift.  (T.T 82:4-8; 83:12-20.)
17  Plaintiff was told, as before, that the business needs of the company, based on her experience and
18  the availability of others, were such that her requested shift change could not be accommodated at
19  that time.  (T.T. 58:19-25; 116:14-17; 139:4-8; 150:10-16.)  Plaintiff repeatedly complained about
20  the company's shift scheduling decision, and according to territory manager, Naji Bsharah, and as
21  evidenced in her writings to the company, plaintiff became increasingly disruptive and
22  insubordinate.  (T.T. 152:8-155:9; Pl.'s Exs. 7, 8, and 11.)
23  On August 15, 2001, plaintiff was terminated by Gil Moore, the owner of New West
24  Stations, Inc.  (T.T. 153:20-154:25.)  Mr. Moore's reasons were that plaintiff's personal attitude
25  made it difficult for others to work with her; she responded negatively to customers; she created a
26  hostile environment for management and co-workers; and she otherwise violated the company's
27
28

**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: DEFENDANT NEW WEST STATIONS, INC.'S MOTION
FOR JUDGMENT ON PARTIAL FINDINGS**

rules of conduct such that she was detrimental to business operations and morale.  (T.T 152:8-155:9; Pl.'s Exs. 11.)

Plaintiff alleges that shortly before her termination by Mr. Moore, she was told by Mr. Bsharah, that she could not be given the "day shift" because she was African-American and it would be bad for business in Lodi.  (T.T. 62:19-21.)  Mr. Bsharah denies that he made these statements or any similar statements to plaintiff.  (T.T. 151:21-152:1.)  Contrary to express company policy, and despite several opportunities to do so, plaintiff never reported the alleged discriminatory statements to company supervisors, the Human Resources Department, or any senior personnel, including the owner, Mr. Moore, who made the termination decision.  (T.T. 134:9-139:15; 143:8-11.)   Of the many complaints made by plaintiff during her employment to supervisors, managers, human resource representatives and owners, none were ever based, made or alleged on grounds of race.  (T.T. 38:7-20; 39:4-9; 43:18-23; 46:24-47:9; 52:9-19; 53:3-54:7; 57:12-59:13; 81:6-25; Pl.'s Exs. 7 and 8.)

**Conclusions of Law**

Plaintiff's only evidence relating to race whatsoever is the alleged statement of Mr. Bsharah.  (T.T. 80:12-25.)  However, defendant proffered evidence that another African-American worked during the day shift.  (T.T. 65:5-8; 159:14-18.)   Additionally, an African-American employee, Claude Lewis, was employed for years as the company's Area Manager and frequently worked at plaintiff's station during the day.  (T.T. 149:3-13.)

Further, plaintiff's various complaints regarding other employees such as Lisa Clark and Keisha Modave, and manager Michelle Velasquez, which she made to management, including Keith Hawk, Chris Moore, Katherine Clark, as well as other employees, did not relate to plaintiff's race.  (T.T. 38:7-20; 39:4-9; 43:18-23; 46:24-47:9; 52:9-19; 53:3-54:7; 57:12-59:13; 81:6-25; Pl.s' Exs. 7 and 8.)

Plaintiff has the burden of proving that the company's shift or pay decisions were based on her being African-American or that the company's termination decision was based on plaintiff's race or her complaints of racial harassment or discrimination.  Plaintiff's alleged illegal working

6

**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: DEFENDANT NEW WEST STATIONS, INC.'S MOTION
FOR JUDGMENT ON PARTIAL FINDINGS**

1  conditions (i.e. working alone) and her threats to retain a lawyer and to report violations to the
2  Labor Board are devoid of any evidence of a relationship to her race.  There is no evidence in this
3  case that any of the alleged hostilities in the working environment, or any employment decisions,
4  were based on plaintiff's race.  As such, plaintiff failed to demonstrate a prima facie case of
5  discrimination under any of her theories, racial discrimination, hostile work environment
6  harassment or retaliation.
7        Even had plaintiff demonstrated a prima facie case, defendant proffered credible evidence
8  to support its lawful termination decision.  Plaintiff was an at-will employee, and she had a long
9  tumultuous relationship with other employees, managers and the company generally.  She was
10 offered a promotion and rejected it shortly before she was terminated.  Her expressed reasons for
11 rejecting the promotion are rife with criticisms of the company.  Defendant proffered evidence of
12 a number of non-race, non-retaliatory reasons for its termination of plaintiff.
13       In sum, plaintiff failed to show by a preponderance of the evidence that she was
14 discriminated against on the basis of her race.  Rather, the evidence amply demonstrated that a
15 constant, tumultuous relationship between plaintiff and defendant and fellow employees, caused
16 by plaintiff's own conduct unrelated to race, was the basis for plaintiff's termination.  Nor was
17 there evidence that her termination was somehow retaliatory for her complaints about the
18 company.
19       Defendant's Rule 52(c) motion is granted and judgment is hereby entered in favor of
20 defendant and against plaintiff.
21       It is so ordered.

DATED: January 30, 2008

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

7
**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: DEFENDANT NEW WEST STATIONS, INC.'S MOTION FOR JUDGMENT ON PARTIAL FINDINGS**